IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BERNARD GAVIN LOWE,<br><br>            Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN, Acing<br>Commissioner of Social Security,<br><br>            Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER<br><br>Case No. 2:14-cv-424 BCW<br><br>Magistrate Judge Brooke Wells |

I.      INTRODUCTION

This matter came before the court pursuant to 28 U.S.C. § 636(c).[1] Plaintiff Bernard Lowe appeals the Social Security Commissioner's decision denying his claim for disability insurance benefits under Title II of the Social Security Act (Act).[2] After considering the parties' briefs, the administrative record and relevant law, the Court AFFIRMS the decision of the Commissioner.

II.     PROCEDURAL HISTORY

Mr. Lowe filed an application for disability benefits on May 26, 2011, alleging disability beginning April 30, 2010.[3] The Commissioner initially denied the application on October 5, 2011 and upon reconsideration on January 27, 2012.[4] In January 2013 an administrative law judge (ALJ) denied Plaintiff's claim.[5] On May 15, 2014, the Appeals Council denied Plaintiff's

---

[1] Docket no. 12.

[2] Docket no. 2.

[3] Tr. 164-70.

[4] Tr. 101-110.

[5] Tr. 9-23.

request for review[6] making the ALJ's decision the Commissioner's final decision for purposes of appeal.[7]

### III. BACKGROUND

Mr. Lowe was 36 years old on April 30, 2010, the alleged disability onset date.[8] Following this alleged disability date Mr. Lowe has worked on a part time basis as a basketball referee and as a Spanish-speaking phone reservation agent for Jet Blue.[9] Plaintiff has a high school education and a bachelor of science in aviation administration.[10]

After graduating from high school, Mr. Lowe joined the military and served in the Navy form 1997-2003. During this time he suffered from some psychological problems and was diagnosed with major depression.[11] Following his military service, Mr. Lowe continued to receive mental health treatment. Diagnoses included major depression and post-traumatic stress disorder (PTSD). Treatment included anti-depressant medication.[12] In approximately 2003, the Department of Veteran's Affairs (VA) assigned a 30% disability rating for depression.[13] As set forth below this disability rating was increased at a later date.

---

[6] Tr. 1-5.

[7] 20 C.F.R. § 404.981. All citations to the Code of Federal Regulation (C.F.R.) are to the 2014 edition.

[8] Given Mr. Lowe's age the court "cautiously scrutinize[s] the employment prospects of so young an individual before placing him on the disability rolls." *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

[9] Tr. 33-36, 43-44, 49-52, 61-62, 183.

[10] Tr. 581, 598. There are inconsistent statements in the record about when Plaintiff completed college. During the VA disability application process in April 2011 Mr. Lowe noted he had completed his degree. In May 2011, however, Plaintiff said he had competed only two years of college when applying for social security disability benefits. In response, Plaintiff states he attempted different types of academic programs which is the reason for these inconsistencies. The inconsistencies are not pertinent to the court's decision.

[11] Tr. 529-535.

[12] Tr. 509-21, 528-44.

[13] Tr. 552-53.

In March 2010, Plaintiff visited with a Nurse Practitioner who noted that he "has had issues in the past with depression/OCD although he is not currently on any meds."[14] His mental evaluation was normal and Mr. Lowe did not have any health issues other than left shoulder pain from an old injury.

In August 2010, Plaintiff presented to VA mental health care providers for the first time since October 2007 and stated that he was requesting service-connected VA disability benefits for PTSD.[15] Jennifer Romeseer, a neuro-psychologist, noted Mr. Lowe's "report of sudden onset PTSD symptoms is questionable and seems motivated by his interest in pursuing service connection [VA disability benefits]." Plaintiff gave Ms. Romeseer a handout with the symptoms of PTSD and when asked which symptoms he exhibited he replied "all of them."[16] Ms. Romeseer noted Mr. Lowe's history of depression, anxiety and the lack of any medical evidence of PTSD.

Plaintiff visited Phillip Gale, M.D. in October 2010 and reported that he was doing well on his medications. Mr. Lowe stated that he had a new girlfriend who helped support him. His roommate had also helped him find employment which Plaintiff reported "helps me by keeping my mind off some of the things that I worry about."[17] Dr. Gale found a GAF score of 50.

The following month in November 2010, Mr. Lowe visited Dr. Gale who noted Mr. Lowe's chief complaint was that "I have been really busy."[18] Plaintiff stated he was doing fairly

---

[14] Tr. 509.

[15] Tr. 504.

[16] *Id.*

[17] Tr. 487.

[18] Tr. 483.

well on his medication and was "working with his uncle delivering fruit and selling Christmas trees."[19]

In April 2011, Mr. Lowe met with Satish Amnadata, M.D., for a one-time evaluation in relation to his claim for VA disability benefits based on major depression.[20] Plaintiff stated that he only worked part time and had been unable to finish college. Plaintiff complained of social inhibition, distrust of others, feelings of inadequacy and short term memory problems.[21] Mr. Lowe admitted to missing his medication 1 to 2 times per week and stated that he wanted to try cognitive behavioral therapy.[22] Despite complaining about memory issues, Mr. Lowe scored a perfect 30 out of 30 on the mini mental status evaluation and did well exhibiting intact memory on examination.[23] Dr. Amnadata diagnosed depression, avoidant personality disorder and borderline personality traits.[24] She opined that Plaintiff would be unable to sustain a job noting that Mr. Lowe "feels he is a failure and feels he cannot maintain a job and get along with others."[25] Based upon Dr. Amnadata's examination the VA issued a decision on April 27, 2011, increasing Plaintiff's disability rating from 30% to 100% effective August 11, 2010.[26]

Mr. Lowe also met with Dr. Gale again during April 2011 for treatment. Plaintiff reported that he "went to Argentina last month and had a really good time"[27] and that he was doing well on his medications. Plaintiff stated he had discontinued one of his anti-depressant

---

[19] *Id.*

[20] Tr. 289-90.

[21] Tr. 292.

[22] Tr. 294.

[23] Tr. 296.

[24] Tr. 296-98.

[25] Tr. 298.

[26] Tr. 252.

[27] Tr. 334.

medications although it had improved his mood. Dr. Gale recorded normal examination findings and rated his GAF at 50 indicating some serious symptoms.[28]

In March 2012, Plaintiff presented to a counselor Susan Carcelli, Ph.D. for an initial assessment.[29] Plaintiff returned during the year for multiple visits.[30] During that time Mr. Lowe expressed continuing conflict with finding meaning in his life and noted continual struggles with his addiction to pornography. In April, Plaintiff stated that he had finished a degree in air transportation but could not find a job.[31] In May Plaintiff met with Workforce Services but he expressed thoughts of "not wanting to go to work full time."[32] In August Mr. Lowe stated that he had an "enjoyable time rock climbing, playing tennis in past 2 days."[33] Plaintiff also continued to express a strong interest in wanting to get married. Later that same month, Dr. Carcelli diagnosed Mr. Lowe with major depressive disorder recurrent, opined that his progress was "poor to moderate" and assessed a GAF score of 50.[34] In September Plaintiff continued to struggle with his depression and with his addiction to pornography.[35] In October Mr. Lowe reported that he obtained the job he applied for.[36] In December Mr. Lowe stated that he started a new job and was now feeling more hopeful. This same month Mr. Lowe sought to fill out a social security disability form, Dr. Carcelli declined to help noting that "it is clearly for an

---

[28] Tr. 334-35.
[29] Tr. 583.
[30] Tr. 583-97.
[31] Tr. 596.
[32] Tr. 595.
[33] Tr. 591.
[34] Tr. 582.
[35] Tr. 589-90.
[36] Tr. 587-88.

individual that is not working."[37]  At their next visit Mr. Lowe told Dr. Carcelli that he wanted to contact a lawyer so he could work on the social security disability form.[38]

  IV.  LEGAL STANDARDS

The Court reviews "the ALJ's decision only to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence in the record."[39]  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[40]  It requires more than a scintilla, but less than a preponderance.

Additionally, the ALJ is required to consider all of the evidence; however, the ALJ is not required to discuss all the evidence.[41]  In reviewing the ALJ's decision the Court evaluates the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[42]  The Court, however, may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]."[43]  Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.[44]  Further, the Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'"[45]

---

[37] Tr. 587.

[38] Tr. 587.

[39] *Madrid v. Barnhart*, 447 F.3d 788, 790 910th Cir. 2006).

[40] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).

[41] *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2000).

[42] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[43] *Lax*, 489 F.3d at 1084 (citation omitted).

[44] *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

[45] *Lax*, 489 F.3d at 1084 (quoting *Zoltanski*, 372 F.3d at 1200).

V.   ALJ'S DECISION

At step one the ALJ found Plaintiff had not engaged in substantial gainful activity since April 30, 2010, the alleged onset date.[46] Next, the ALJ found Mr. Lowe had the severe impairments of affective/mood disorders including major depression and avoidant personality disorder. The ALJ rejected Plaintiff's claims of cardio myopathy noting that the medical record did not support them.[47] At step three the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ specifically considered and rejected listing 12.04 ("affective disorders characterized by disturbance of mood, accompanied by a full or partial manic or depressive syndrome")[48] and 12.06 (anxiety related disorders).[49]

Between steps three and four, the ALJ determined Plaintiff retained the residual functional capacity (RFC) to perform the full range of semi-skilled work with additional limitations.[50] For example, the ALJ concluded Plaintiff could only work at low stress and low concentration levels.[51] In support of his RFC finding the ALJ noted Mr. Lowe's travel, his part time work for Jet Blue which Mr. Lowe said he enjoyed and "helped his depression," and the evidence found in the medical record. In addition the ALJ specifically considered the VA assessment of a 100% disability rating. The ALJ concluded the VA's disability determination was not supported in the record. For example, Mr. Lowe scored 30 out of 30 on the mini mental state examination despite complaining of short-term memory loss. Plaintiff was alert, clear and responding to questions and there was no evidence of hallucinations or delusions, panic attacks

---

[46] Tr. 14.

[47] Tr. 15.

[48] 20 C.F.R. Part 404, Subpart P, Appx. 1.

[49] Tr. 15.

[50] Tr. 17.

[51] Tr. 17.

or suicidal thoughts. After citing to more examples in the record, including to evidence after the VA evaluation was completed by Dr. Annadata, the ALJ concluded that the VA's assessment was not controlling on the RFC determination.[52]

Before turning to step four, the ALJ considered Plaintiff's credibility and determined that the alleged severity of his claimed impairments was undermined by his daily activities, travel and part time work. The ALJ further determined that Dr. Annadata was not a treating physician and therefore not entitled to controlling weight. Citing to the medical evidence the ALJ assigned her little weight. The ALJ assigned Dr. Carcelli, Mr. Lowe's counselor, no weight because she failed to "opine on any specific work-related limitations."[53] Finally the state examining physicians, who found Mr. Lowe was not disabled, were given only partial weight.[54]

At step four, the ALJ found Mr. Lowe unable to perform past relevant work as a hospital corpsman. Finally, at step five, the ALJ relied on the VE testimony and found Plaintiff could perform a significant number of jobs in the national economy. Representative jobs included work as a commercial cleaner, night cleaner and meat clerk.

VI. PLAINTIFF'S APPEAL

On appeal, Plaintiff argues the ALJ made two errors that necessitate a remand. The ALJ committed reversible error by (1) failing to adequately consider and weigh the medical source opinions of record; and (2) by relying on the vocational expert's (VE) testimony that a significant number of jobs existed, which Plaintiff could perform, despite the conflict between the job descriptions in the Dictionary of Occupational Titles (DOT) and Mr. Lowe's RFC. The

---

[52] Tr. 19.

[53] Tr. 21.

[54] Tr. 21-22.

VE failed to provide an adequate explanation to resolve these conflicts and so the ALJ improperly relied on the VE's testimony.

> A.  *Whether the ALJ Erred by Failing to Adequately Consider and Weigh the Medical Opinions*

Plaintiff argues the "ALJ's decision cannot be sustained since he essentially substituted his judgment for the expert psychological source statements."[55] These statements included those from Dr. Annadata who conducted the VA disability examination and those from Dr. Carcelli who opined that Mr. Lowe's progress was "poor to moderate." The court disagrees with Plaintiff's arguments.

As noted in the regulations, a treating source's opinion cannot be given controlling weight if it is not well-supported by medically acceptable clinical or laboratory diagnostic techniques, or if it is inconsistent with other substantial evidence in the record.[56] An ALJ, however, must still give "good reasons" in his decision for whatever weight he provides to a treating source opinion, be it great weight, little weight, or something in between.[57] While 20 C.F.R § 404.1527(c) provides a framework for how an ALJ is to weigh a medical opinion, an ALJ is not required to "apply expressly" every relevant factor for weighing opinion evidence.[58]

Additionally applicable to the instant case are the distinctions between the standards used by the SSA and another agency. Although they are entitled to consideration, another agency's determination of disability is based on different rules and is not binding on the Social Security

---

[55] Reply p. 2.

[56] 20 C.F.R. § 404.1527(c)(2)

[57] 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 375188 *5.

[58] *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Administration.[59]  Indeed, the "fact that the ALJ drew a different conclusion concerning [Mr. Lowe's] condition does not constitute legal error."[60]

Here, the ALJ considered Dr. Annadata's opinion and gave it little weight because she was not a treating physician and the medical record did not support her opinion of disability.  As pointed out by the Commissioner, Dr. Annadata visited with Mr. Lowe one time and there is no record that she had a long term patient physician relationship that would entitle her opinion to greater weight.  Additionally, the ALJ cited to medical evidence in the record after Dr. Annadata's examination that undermined her opinions.  The ALJ also explicitly considered Dr. Carcelli's opinion and rejected it.  The court finds the ALJ's analysis of these opinions was adequate and supported by the record.  In short the ALJ provided "good reasons" to discount the opinions of these medical professionals.  The fact that the ALJ weighted the opinions of these treating professionals different than what Mr. Lowe would have liked does not constitute error.

Finally, the court notes that in *Kralicek* the Tenth Circuit rejected arguments similar to those made by Mr. Lowe in this case.  In that case the ALJ failed to explicitly discuss the VA disability rating.  Yet despite this failure the Tenth Circuit held that the lack of detail was not reversible error.[61]  Here, the ALJ was much more explicit in his analysis of the VA disability rating.  Thus the court finds no reason to disturb the ALJ's analysis of the medical opinions.[62]

---

[59] 20 C.F.R. § 404.1504; *Musgrave v. Sullivan*, 966 F.2d 1371, 1375 (10th Cir. 1992) (rejecting the claimant's argument that the ALJ erred in failing to give greater weight to the VA's previous determination of disability).

[60] *Kralicek v. Apfel*, 229 F.3d 1164, 2000 WL 1153288 *3 (10th Cir. 2000).

[61] *Kralicek*, 2000 WL 1153288 at *3; *see also Musgrave*, 966 F.2d 1371, 1375  (rejecting the claimant's argument that the ALJ erred in failing to give greater weight to the VA's previous determination of disability)

[62] The court notes that the ALJ did not deny benefits on the ground that Mr. Lowe failed to follow prescribed treatment.  The court therefore need not address Plaintiff's arguments relying on SSR 82-59.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10h Cir. 2000).

B.  *Whether the ALJ Erred by Relying on the VE's Testimony*

Plaintiff argues the ALJ erred in relying on the vocational expert's testimony, because there were unresolved conflicts between the VE's testimony and the DOT.  Specifically, Plaintiff asserts that the VE's testimony about low stress, concentration and memory levels conflicts with the DOT pertaining to the jobs Plaintiff could allegedly perform.  And thus the ALJ erred in simply reducing the number of available jobs rather than resolving the conflicts.[63]  Plaintiff's arguments are undermined by the record.

For example, Plaintiff takes issue with the job descriptions for commercial cleaners, night cleaners and meat clerks arguing that they require interactions with people that exceed his RFC limitations.  During the hearing, however, the VE testified that the night cleaner job would not require much public contact.  Further, the VE testified that the meat clerk position was one where an individual would work in the back sorting and breaking up the meat not one where an individual is in the front of the counter talking to consumers.[64]  This job description is consistent with someone who would work in the warehouse or back of a grocery store and it is foreseen by the DOT description.[65]

Based upon a review of the record, the court finds the ALJ did not err by relying on the VE's testimony.

---

[63] Pla. opening brief p. 17.

[64] Tr. 73-74.

[65] DOT No. 222.684-010, 1991 WL 672129 (meat clerk job description).

VII. CONCLUSION AND ORDER

For the reasons stated above, the court finds the Commissioner's decision is supported by substantial evidence and free from legal error. The Commissioner's decision is therefore AFFIRMED. The Clerk of the Court is directed to close the case.

DATED this 3 September 2015.

*[signature]*

Brooke C. Wells
United States Magistrate Judge